```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE MIDDLE DISTRICT OF GEORGIA
                           MACON DIVISION
```

SANDY RUMBLE, d/b/a BRITANNICA    *
CHAUFFEUR SERVICES,
Individually and on behalf of     *
all others similarly situated,

    Plaintiff                     *

        v.                        *    CASE NO. 5:05-CV-133(WDO)

ROBERT WATERHOUSE; GODFREY        *
WATERHOUSE; NICOLAAS JAN
CAREL FRANCKEN, et al.,           *

    Defendants                    *

## O R D E R

The Court presently has pending before it several motions, including Defendant Contractors Bonding Limited's ("CBL") Motion to Dismiss Plaintiff's federal RICO claims for failure to state a claim and Defendant Nicolaas Francken's Motion to Dismiss for lack of personal jurisdiction. The Court finds that these two motions should be granted. Since the granting of these motions disposes of all of Plaintiff's federal law claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, except to the extent that the Court does grant Plaintiff's Motion for Default Judgment Against Defendants Robert Waterhouse, Godfrey Waterhouse, Phoenix Brokers and Mainstreet Brokerage, none of whom have ever answered Plaintiff's Complaint. Plaintiff's remaining state law claims are dismissed without prejudice.

## FACTUAL BACKGROUND

Plaintiff Sandy Rumble filed suit on behalf of himself and a proposed class seeking damages related to the Georgia Insurance Commissioner's cancellation of various insurance policies that covered taxicabs and taxicab businesses operating in Georgia.

Plaintiff initially sued Robert and Godfrey Waterhouse and their companies, Phoenix Brokers and Mainstreet Brokerage, from whom he had purchased his policy. When those Defendants failed to answer, Plaintiff filed the Amended Complaint to add CBL, a New Zealand insurance company that had allegedly offered to stand behind the policies sold by Phoenix. Plaintiff also added Defendant Francken, who is a director of CBL.

Plaintiff, a resident of the state of Georgia, is the sole proprietor of a car service business known as Britannica Chauffeur Services that provides a luxury car service to clients in the Atlanta, Georgia area. As part of his business, he drives customers to and from destinations within metropolitan Atlanta.

Robert Waterhouse and Godfrey Waterhouse were the agents who sold the policies in question. Defendant Phoenix Brokers, Inc. and Defendant Mainstreet Brokerage are insurance brokerage firms owned and operated by the Waterhouses. Defendant CBL is a New Zealand limited liability company that offers "surplus line" policies and was the insurer that allegedly offered to "stand behind" the policies in question. Nicolaas Francken, who resides in New Zealand, was named as a Defendant because of his business relationship with CBL.

Plaintiff claims that in February of 2002 he "believed he had" purchased commercial and automobile insurance through Defendant Phoenix Brokers, Inc. from Mark Solofa Insurance Company. "Defendants" issued Plaintiff documentation which "purportedly" constituted an insurance policy. Plaintiff renewed his insurance through "Defendants" in February 2003, 2004, and 2005. Plaintiff paid insurance premiums and insurance premium taxes in excess of $6,000.

2

On or about February 28, 2005, the State of Georgia filed criminal charges and a civil complaint against Phoenix Brokers, its owner Godfrey Waterhouse and Godfrey's son, Robert Waterhouse. The State claimed these defendants had sold insurance to taxi and limousine companies in the name of Mark Solofa Insurance Company, when Solofa did not actually issue the policies.

Plaintiff alleges that on March 1, 2005 he received a letter from the Georgia Insurance Commissioner's Office stating that Defendants Phoenix Brokers, Inc. and Mainstreet Brokerage had issued "fraudulent, non-existent insurance policies" under the auspices of Mark Solofa Insurance Company, a company located in American Samoa. Plaintiff further alleges in his amended Complaint that "upon knowledge and belief," Mark Solofa Insurance Company does not transact business in Georgia; "Defendants" sold hundreds of non-existent insurance policies as a purported agent for Mark Solofa Insurance Company to various taxicab and limousine companies throughout the state of Georgia; "Defendants" illegally funneled monies obtained from insurance premiums to bank accounts in New Zealand and other places located outside the United States; Defendants Robert Waterhouse, Godfrey Waterhouse, and Phoenix Brokers collected more than four million dollars in insurance premiums on the sale of the fraudulent insurance policies; Robert Waterhouse, Godfrey Waterhouse, and Phoenix Brokers allegedly transferred funds generated from collecting premiums to Defendant CBL; and Defendant CBL allegedly represented that it had purchased the insurance company, "Mark Solofa." Plaintiff claims that Defendant CBL "represented" that Mark Solofa was an insurance company qualified to issue

3

automobile and business premises liability insurance policies to Georgia customers.

Plaintiff alleges that Defendant Francken was an "active part" of the conspiracy to sell fraudulent insurance in Georgia, was fully aware that CBL did not own or operate Mark Solofa and that Mark Solofa was not approved or licensed to issue policies in Georgia. Upon Plaintiff's further "knowledge and belief," CBL accepted premium payments from Defendants Godfrey Waterhouse, Robert Waterhouse, and Phoenix Brokers, Inc. while fully aware that CBL did not own or operate Mark Solofa and fully aware that Mark Solofa was not approved or licensed to issue policies in the state of Georgia.

Plaintiff Rumble asserts claims pursuant to Federal Racketeering Influenced and Corrupt Organization (RICO) Act, 18 U.S.C.A. § 1961. Plaintiff alleges that Defendants Robert Waterhouse, Godfrey Waterhouse, Nicolaas Francken, Phoenix Broker, Inc., Mainstreet Brokerage, and CBL constitute a racketeering "enterprise" within the meaning of 18 U.S.C. § 1961. The enterprise's functions allegedly included hiring employees and operating an office out of Barnesville, Georgia for the purpose of selling fraudulent commercial premises and automobile liability insurance for taxicab and limousine companies. The common purpose of the enterprise was allegedly to defraud taxicab and limousine businesses by selling fraudulent insurance policies, collecting premiums, and funneling money to bank accounts and entities located outside the United States. Plaintiff alleges the enterprise is engaged in interstate or foreign commerce. Plaintiff further alleges Defendants have violated federal RICO provisions and are liable to Plaintiff and the proposed Class Members for all damages allowed under federal law as a result of such violations,

4

including compensatory damages, punitive damages, and attorney's fees.

Defendants Francken and CBL have moved to dismiss Plaintiff's Complaint on various grounds. As explained below, the Court finds that Defendant Francken is not subject to the personal jurisdiction of this Court and Plaintiff has failed to state a federal RICO claim against Defendant CBL. Accordingly, for the following reasons, Plaintiff's Complaint is dismissed as to these Defendants.[1]

### DEFENDANT FRANCKEN'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendant Nicolaas Francken filed a Motion to Dismiss arguing that he lacks the constitutionally and statutorily required minimum contacts with the state of Georgia and thus this Court does not have jurisdiction over him. (*See* N. Francken Aff.) Because the issues of liability and jurisdiction are separate inquiries, it is appropriate to address personal jurisdiction prior to addressing the substantive merits of any claims. *Vogt v. Greenmarine Holding, LLC*, 2002 WL 534542, *3 (N.D. Ga. 2002). "[Federal statutes] cannot transmogrify insufficient minimum contacts into a basis for personal jurisdiction

---

[1] Before addressing Defendant Francken and CBL's motions to dismiss, the Court notes that Plaintiff has filed a Motion for Default Judgment against Defendants Robert Waterhouse, Godfrey Waterhouse, Phoenix Brokers and Mainstreet Brokerage. It appears these Defendants were properly served on May 6, 2005 and July 17, 2005. None of these Defendants have filed any responsive pleadings or made any appearance whatsoever in the case. Default judgment is therefore appropriate pursuant to Federal Rule of Civil Procedure 55 and is HEREBY GRANTED as to these Defendants. Plaintiff is ordered to file a brief by October 3, 2007 setting forth the amount of damages to be assessed against these Defendants. If, after the Court reviews Plaintiff's brief on damages, it appears that a hearing is necessary, a hearing will be scheduled and Plaintiff will be notified of the same.

by making these contacts elements of a cause of action since this would violate due process. Similarly, jurisdiction and liability are two separate inquiries. The fact that a defendant would be liable under a statute if personal jurisdiction over it could be obtained is irrelevant to the question of whether such jurisdiction can be exercised. The federal statute's definition of corporate affiliation as an element of liability cannot confer personal jurisdiction on the basis of such affiliation. *Id.* (citing *Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corporation*, 230 F.3d 934, 944-45 (7th Cir. 2000); *United Electrical, Radio & Machine Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1096 (1st Cir. 1992).

Defendant Francken is a resident of New Zealand where he owns and runs an international trustee company and assists his wife in running the hotel they own together. As part of his management of the trustee company, WKF Asset Management Limited, Francken is a named director of more than 100 companies, including Defendant CBL. WKF offers international trust services to clients worldwide. (Resp. Def. Fracken's Mot to Dismiss, Ex. A.) Francken is named as a Defendant in this action based on his role as a director of CBL.

Francken's role as director of CBL is a strictly non-executive one. He is not involved in the day to day operations of the company. He receives a monthly fee of approximately $846.00 USD for his role as a director. In his capacity as director of CBL, Francken was generally aware that CBL held the risk on a variety of insurance, bond, and warranty products in numerous countries around the world, including the risk for certain taxi insurance sold in Georgia. Francken had no involvement with the management of the taxi program;

6

he did not see any of the underlying insurance policies, speak, or otherwise communicate with any representative of the Georgia insurance broker about the business and did not make any decisions with respect to this line of business while the program was in place. Francken did not sign any documents relating to the insurance broker or any insurance issued in Georgia and was not aware of the name of the insurer listed on the taxi insurance policies for which he understood CBL held the risk. He did not represent to anyone that CBL had purchased and was the sole owner and operator of Mark Solofa Insurance Company.

Francken contends he has not done anything to deliberately avail himself of the laws of Georgia and was not personally involved in the sale of the insurance that is the basis of this action. Francken has never been to the state of Georgia and has only been to the United States on two or three occasions for stops in transit to another country. To his knowledge, he has never spoken on the phone to anyone in Georgia, has never entered into a contract with anyone in Georgia, does not own real property in Georgia, has never solicited business from or advertised in Georgia, and has not otherwise done any business in Georgia.

Determining whether a district court has personal jurisdiction over a defendant involves two steps. First, the court must determine whether the applicable state's "long-arm statute provides a basis for personal jurisdiction. If so, then [the court] must determine whether sufficient minimum contacts exist between the defendants and the forum state so as to satisfy traditional notions of fair play and substantial justice under the Due Process Clause of the Fourteenth

7

Amendment." *Rogers v. Nacchio*, 2007 WL 2002594, \*2 (11th Cir. July 12, 2007).

The Georgia long-arm statute provides that a court may exercise personal jurisdiction over a nonresident defendant when it is shown that the defendant: (1) transacts any business within Georgia; (2) commits a tortious act or omission within Georgia other than defamation; (3) commits a tortious injury in Georgia caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in Georgia; (4) owns, uses, or possesses any real property situated within Georgia; or (5) with respect to proceedings for alimony, child support, or division of property in connection with an action for divorce, maintains a matrimonial domicile in Georgia. O.C.G.A. § 9-10-91. In addition, the action must arise out of the defendant's conduct that satisfies one of these provisions. *Id.*

After a plaintiff establishes a basis for jurisdiction under the state's long-arm statute, the plaintiff must also establish the defendant has the minimum contacts with the state necessary to satisfy due process. *Id.* at \*3.

> The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72, 105 S. Ct. 2174, 2181-82, 85 L. Ed. 2d 528 (1985). For general jurisdiction, a non-resident defendant's contacts with the forum that are unrelated to the litigation must be substantial, showing continuous and systematic contacts between the defendant and the forum state. *Meier v. Sun Intern. Hotels, Ltd.*, 288 F.3d 1264, 1274 (11th Cir. 2002). To constitute minimum contacts for purposes of specific jurisdiction, a defendant's contacts with the forum must satisfy three

> criteria: (1) the contacts must be related to the
> plaintiff's cause of action or have given rise to it;
> (2) the contacts must involve some act by which the
> defendant purposefully avails itself of the privilege of
> conducting activities within the forum, thus invoking the
> benefits and protections of its laws; and (3) the
> defendant's contacts with the forum must be such that the
> defendant should reasonably anticipate being haled into
> court there. *McGow v. McCurry*, 412 F.3d 1207, 1214 (11th
> Cir. 2005).

*Id.*

In *Rogers*, the district court dismissed some of the defendants based on a lack of personal jurisdiction. The plaintiffs had "failed to identify any acts of any defendant that were directed towards the state of Florida, or show that any defendant had caused injury in Florida for purposes of" that state's long-arm statute. *Id.* at *3. Because the plaintiffs (1) did not claim to have sustained physical injury or property damage and (2) failed to provide any documentation showing that any defendant had engaged in "substantial or continuous activity" in Florida, they failed to establish jurisdiction under the state statute. *Id.* "Moreover, even if they had established a basis for jurisdiction under the Florida long-arm statute, they did not provide any support for the notion that any defendant had the minimum contacts with Florida necessary to satisfy due process. Accordingly, the district court did not err in dismissing defendants from the case on the ground that it lacked jurisdiction over the person." *Id.*

In the case at bar, Plaintiff has failed to establish that Defendant Francken had, or has, the minimum contacts with the state necessary to satisfy due process. Plaintiff failed to allege (1) any specific contacts by Francken that were related to Plaintiff's cause of action or that gave rise to the claims; (2) any contacts involving acts by which Francken purposefully availed himself of the privilege

9

of conducting activities within the forum, thus invoking the benefits and protections of its laws; or (3) that any alleged contacts by Francken with the forum were such that he should have reasonably anticipated being haled into court in Georgia. Francken had no involvement in the events giving rise to this action. He did not see any of the underlying insurance policies, speak, or otherwise communicate with any representative of the insurance broker about the business, make any decisions with respect to the insurance that was sold, or sign any documents relating to Phoenix Brokers or any insurance issued in Georgia. While Francken is a co-owner of WKF Asset Management, that owns just six percent of the shares of CBL, Francken spends the vast majority of his time working for entities other than CBL. The mere fact that Francken is a director of a company that happens to be involved in this case does not make him subject to suit in this court. Further, there is no evidence of the type of "abuse of the corporate entity" that would justify finding CBL is the "alter ego" of Francken. *See Vogt*, at \*7 ("holding companies are investment companies for the purpose of diversifying risk" and thus "do not conduct the same business as their subsidiaries and their relationship cannot be viewed as one of agency") (citing *Doe v. Unocal Corp.*, 248 F.3d 915, 929 (9th Cir. 2001)); *Girard v. Weiss*, 160 Ga. App. 295, 298 (1981) (non-resident defendant not subject to jurisdiction where company of which he was officer or director had minimum contacts but no evidence that individual had personally done anything to avail himself of the privilege of doing business in Georgia); *Club Car, Inc. v. Club Car (Quebec) Import, Inc.*, 362 F.3d 775, 784 (11th Cir. 2004) ("A nonresident individual cannot be subject to personal jurisdiction

based solely upon acts in Georgia taken in his or her corporate capacity."); *United States v. Fidelity Capital Corp.*, 920 F.2d 827, 837 (11th Cir. 1991) ("To establish that a corporation is an alter ego, a party must show that the shareholders disregarded the corporate entity and made it a mere instrumentality for the transaction of their own affairs, that the corporation and its owners have such unity of interest and ownership that they lack separate personalities, and that to observe the corporate form would work an injustice or promote fraud.") (citations omitted). Because jurisdiction over Francken in this court would not comport with traditional notions of fair play and substantial justice, Defendant Nicolaas Francken is dismissed from this action.

**DEFENDANT CBL'S MOTION TO DISMISS FEDERAL RICO CLAIMS**

Defendant CBL seeks dismissal of Plaintiff's federal RICO claims, contending that Plaintiff has failed to state such a claim upon which relief may be granted. In ruling upon Defendant's motion, the Court accepts Plaintiff's allegations in his Complaint as true. However, as recently made clear by the U.S. Supreme Court, Plaintiff has an obligation to provide the grounds of his entitlement to relief which "requires more than labels and conclusions." *Bell Atlantic Corp. v. Twombly,* 167 L. Ed. 2d 929, 940 (2007). "A formulaic recitation of the elements of a cause of action will not do." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* While the Court should be cautious before dismissing a claim in advance of discovery, the Court must also be mindful that a deficiency in pleading a claim for entitlement

11

to relief should be "exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 942.

Evaluation of a federal RICO claim based upon alleged fraud requires particularly close scrutiny given the requirement under Rule 9(b) of the Federal Rules of Civil Procedure that "all averments of fraud . . . [and] the circumstances constituting fraud . . . shall be stated with particularity." It is not clear from Plaintiff's vague Complaint the exact basis for the RICO violation. However, construing the Complaint in Plaintiff's favor, the Court infers that Plaintiff relies upon mail and wire fraud as the basis for the federal RICO claim.

In order to assert a RICO claim predicated on mail or wire fraud, a plaintiff

> has the burden of alleging and proving: 1) that the defendant intentionally participated, 2) in a scheme to defraud, 3) the plaintiff of money or property, 4) by means of material misrepresentation, 5) using the mails or wires, 6) that the plaintiff relied on a misrepresentation made in furtherance of the fraudulent scheme[,] 7) that the misrepresentation would have been relied upon by a reasonable person[,] 8) that the plaintiff suffered injury as a result of such reliance[,] and 9) that the plaintiff incurred a specifiable amount of damages.

*Burstein v. First Penn-Pac. Life Ins. Co.*, 209 F.R.D. 674, 676-77 (S.D. Fla. 2002) (citing *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1361 (11th Cir. 2002)). Pursuant to § 1964(c), claimants must also "show (1) the requisite injury to 'business or property,' and (2) that such injury was 'by reason of' the substantive RICO violation." *Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277, 1283 (11th Cir. 2006). "The 'by reason of' requirement implicates two concepts: (1) a sufficiently direct injury so that a plaintiff has standing to sue; and (2) proximate cause." *Id.* at 1287. Because Defendant CBL filed

12

a Motion to Dismiss, the Court must determine whether Plaintiff sufficiently stated these RICO elements pursuant to the following guidelines:

> In order to survive a motion to dismiss, a plaintiff must allege facts sufficient to support each of the statutory elements for at least two of the pleaded predicate acts. *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 949 (11th Cir. 1997). A complaint that states a claim of fraud must satisfy Federal Rule of Civil Procedure 9(b), which states that "the circumstances constituting fraud or mistake shall be stated with particularity." *Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001). "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Id.* (quotation marks and citation omitted). Moreover, to recover on a civil RICO claim, a plaintiff must show that "he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S. Ct. 3275, 3285, 87 L. Ed. 2d 346 (1985).

*Rogers*, at *4.

In *Rogers*, a case wherein the court addressed a motion to dismiss in this context, the "complaint failed to allege specific facts with regard to (1) which defendant made certain statements, (2) which statements and acts constituted the predicate acts, (3) [the plaintiffs'] reliance on any of the specific statements, or (4) the manner in which [the plaintiffs] were misled by any statement." *Rogers*, at *5. The court of appeals affirmed the district court's finding that the complaint failed to state a claim against any defendant under the Florida RICO statute and thus "for the same reasons" affirmed the district court's dismissal of the federal RICO counts. *Id.*

13

Not only must a RICO complaint set forth with specificity what was done by whom that violated the law, but a plaintiff must also allege with some particularity that the conduct in question constituted a "racketeering" activity as contemplated by that law. "A racketeering activity is any act indictable under certain provisions of the United States Code, including mail fraud and money laundering." *General Cigar Co., Inc. v. CR Carriers, Inc.*, 948 F. Supp. 1030, 1034-35 (M.D. Ala. 1996) (citing 18 U.S.C. § 1961(1)). Rule 9's "'particularity rule' in this context serves an important purpose by 'alerting defendants to the precise misconduct with which they are charged.'" *Id.* (citing *Durham*, 847 F.2d at 1511). "Since Rule 9(b)'s purpose is to ensure the defendants are notified of the conduct complained of, alleged fraudulent acts need not be attributed to certain defendants if the 'complaint sufficiently describes the acts and provides defendants with sufficient information to answer the allegations.'" *Id.* at 1037 (quotation omitted).

Plaintiff's complaint falls woefully short of stating a federal RICO claim against CBL. The amended Complaint couches its ultimate RICO allegations against CBL as follows:

> 34. Upon knowledge and belief, Robert Waterhouse, Godfrey Waterhouse, and Phoenix Brokers transferred funds generated from collecting premiums to Defendant CBL.
>
> 35. Upon knowledge and belief, Defendant CBL represented, through its director Defendant Francken, that it had purchased the Insurance Company Mark Solofa, and that it was the sole owner and operator of Mark Solofa.
>
> 36. Defendant CBL represented that Mark Solofa was an insurance company qualified to issue automobile and business premises liability insurance policies to Georgia customers when in fact Mark Solofa did not operate within the State of Georgia.
>
> . . .

14

> 38. Upon knowledge and belief, CBL knowingly accepted premium payments from Defendants Godfrey Waterhouse, Robert Waterhouse and Phoenix Brokers, Inc. while fully aware that Mark Solofa was not approved or licensed to issue policies in the State of Georgia.

Plaintiff's Amended Complaint, ¶¶ 34-36, 38.

The Court finds that Plaintiff has failed to plead a violation of any RICO provision and/or failed to plead that a particular violation was the proximate cause for any injury Plaintiff suffered. While Plaintiff *alleges* Defendants CBL and Francken committed wire and/or mail fraud, Plaintiff's conclusory allegation that RICO was violated does not mean RICO was actually violated. Plaintiff failed to allege when, where, or how any specific representations by CBL or Francken were made and, if they were made, how they were fraudulent; failed to allege CBL or Francken engaged in any acts that amounted to "racketeering"; and, failed to allege that CBL failed to comply with any obligation it owed to Plaintiff. Although courts sometimes permit grouping defendants together in allegations, in this case that is not appropriate because the Complaint does not sufficiently describe the acts alleged and thus failed to provide the Defendants with sufficient information to answer the allegations. Even if Plaintiff has sufficiently alleged that "misstatements" were made, that is not enough. The Supreme Court has made clear that misstatements must be material to serve as the basis for a RICO claim. *Neder v. United States*, 527 U.S. 1, 25, 119 S. Ct. 1827 (1999). Plaintiff failed to allege that any statements made by CBL about itself or Solofa were material.

Mail and wire fraud also require showing that a reasonable person would have acted on the representations alleged to have been

fraudulent and "that the defendant intended to create a scheme 'reasonably calculated to deceive persons of ordinary prudence and comprehension.'" *United States v. Brown*, 79 F.3d 1550, 1557 (11th Cir. 1996) (citation omitted). Plaintiff makes no such allegations in this case with sufficient particularity as required under Rule 9.

Plaintiff's allegations are simply insufficient to state a claim regarding "a scheme to obtain money by means of false or fraudulent pretenses and representations." *Morosani v. First Nat. Bank of Atlanta*, 703 F.2d 1220, 1222 (11th Cir. 1983) (overturning district court's dismissal based on allegations not being a "recognized form of criminal activity" finding that the plaintiff's claim that bank improperly charged excessive interest on a loan extended to plaintiff may state such a claim). Nor is there any allegation that CBL, Francken, or anyone else "fraudulently induced" Plaintiff by submitting any sort of false documentation regarding the insurer's stability, worth, or reliability. *See United States v. Krenning*, 93 F.3d 1257 (5th Cir. 1996) (criminal case wherein defendants used false documents to falsely represent insurance company's worth); *United States v. Cavin*, 39 F.3d 1299 (5th Cir. 1994) (criminal case where court found certain activities that inflated company's worth were not fraudulent). Even if there had been some allegation that the agents made some sort of statement that could be construed as fraudulently inducing the Plaintiff into purchasing the policies, the agents were far removed from CBL and Francken in both a geographical and economic sense. Further, Plaintiff failed to allege any facts sufficient to place on CBL an obligation to travel from New Zealand to the United States to determine if every insurance broker and/or

16

agent with whom they may have had a relationship was honest in their advertising, nor are there allegations of any circumstances that would have placed CBL on alert of potential fraud. *See United States v. Parker*, 839 F.2d 1473, 1479 (11th Cir. 1988) (Common sense dictates that a securities broker cannot be expected to travel to the company vault to make sure his superiors have acquired sufficient collateral to back each investment sold.). In summary, the amended Complaint does not allege that CBL directed anyone to do anything that was a racketeering activity that caused harm to Plaintiff. It merely alleges that CBL represented to some unspecified person at some unspecified time that it owned Mark Solofa and accepted a portion of the premium payments paid by Plaintiff and others for insurance. This is not sufficient to state a federal RICO claim.

As explained above, a RICO plaintiff must also set forth a claim that the alleged violations were the proximate cause for the alleged injury. Even if the Plaintiff had set forth a RICO claim, the proximate cause element would not be met. Plaintiff's "damage" or "injury" centers around the assertion that during the time Plaintiff considered himself to be "without insurance," he was damaged by the possibility that someone *could have* filed a claim that *may not* have been paid. This is far from a claim that states a cognizable RICO injury. Plaintiff did not make a claim during the time in question and there are no allegations that any valid and covered claims under the policies were not paid.

Plaintiff failed to allege facts with sufficient particularity to state a RICO fraud claim against Defendant CBL. Therefore, Plaintiff's federal RICO claim against CBL must be dismissed.[2]

**REMAINING CLAIMS**

Because the Court has dismissed the federal claims over which it had original jurisdiction, it declines to exercise supplemental jurisdiction over any remaining state law claims. *McCulloch v. PNC Bank, Inc.*, 298 F.3d 1217, 1227 (11th Cir. 2002) (citing 28 U.S.C. § 1367(c)(3)). Accordingly, Plaintiff's state law claims are dismissed without prejudice.

CONCLUSION

Defendant Francken's Motion to Dismiss for lack of personal jurisdiction (Doc. 102) is granted. Defendant CBL's Motion to Dismiss Plaintiff's federal RICO claims (Doc. 100) is granted. Plaintiff's Motion for Default Judgment as to Defendants Robert Waterhouse, Godfrey Waterhouse, Phoenix Brokers, and Mainstreet Brokerage (Doc. 106) is granted with the amount of the judgment to be determined after Plaintiff submits a supplemental brief (to be filed before October 3, 2007) on the issue of damages. All remaining

---

[2]The Court further denies Plaintiff's pending motion to file a second amended complaint. Although a party should generally be given at least one opportunity to amend before the district court dismisses a complaint with prejudice, which Plaintiff has had, the court need not "allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Rogers*, at *6. A review of the proposed second amended complaint proferred by the Plaintiff shows he still would not meet the pleading requirements of RICO In the proposed second amended complaint, Plaintiff still fails to assert facts that would serve as the basis for a federal RICO claim based on the same reasons the first amended complaint fails to state a claim. The motion to file a second amended complaint (Doc. 105) is therefore DENIED.

claims are dismissed without prejudice, and all remaining pending motions are denied as moot.

IT IS SO ORDERED, this 30th day August, 2007.

                                           S/Clay D. Land
                                                CLAY D. LAND
                                     UNITED STATES DISTRICT JUDGE